# EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patricia Rodriguez, Esq (SBN 270639)<br>Rodriguez Law Group, Inc.<br>1961 Huntington Drive, Suite 201<br>Alhambra, CA 91801<br>TELEPHONE NO.: (626) 888-5206   FAX NO. *(Optional):* (626) 282-0522<br>E-MAIL ADDRESS *(Optional):* prod@attorneyprod.com<br>ATTORNEY FOR *(Name):* Plaintiff Diane Weinsheimer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Dive West
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Diane Weinsheimer

DEFENDANT/RESPONDENT: MTC Financial Inc. et al.

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | CASE NUMBER:<br>30-2016-00846567-CU-OR-CJC |
| | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* Civil Case Cover Sheet

3. a. Party served *(specify name of party as shown on documents served):*
   SHELLPOINT MORTGAGE SERVICING

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   CSC Lawyers Inc. Service - Agent for Service of Process for SHELLPOINT PARTNERS LLC

4. Address where the party was served:
   2710 Gateway Oaks Drive, Sacramento, CA 95833

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*          (2) at *(time):*

   b. ☐ **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: Diane Weinsheimer | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: MTC Financial Inc. et al. | 30-2016-00846567-CU-OR-CJC |

5.  c. [✓] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* 04/27/16              (2) from *(city):* Alhambra

(3) [✓] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) [ ] to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

d. [ ] **by other means** *(specify means of service and authorizing code section):*

[ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as occupant.
   d. [✓] On behalf of *(specify):* SHELLPOINT MORTGAGE SERVICING
   under the following Code of Civil Procedure section:

| | |
|---|---|
| [✓] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7. **Person who served papers**
   a. Name: Nick Stahl
   b. Address: 1961 Huntington Drive, 201, Alhambra, CA 91801
   c. Telephone number: (626) 888-5206
   d. **The fee** for service was: $ 0.00
   e. I am:

   (1) [✓] not a registered California process server.
   (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
   (3) [ ] a registered California process server.
       (i) [ ] owner [ ] employee [ ] independent contractor.
       (ii) Registration No.:
       (iii) County:

8. [✓] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: April 27, 2016

Nick Stahl
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patricia Rodriguez Esq. SBN 270639<br>Rodriguez Law Group, Inc.<br>1961 W. Huntington Drive Suite 201<br>Alhambra, California 91801<br>TELEPHONE NO.: (626) 888-5206   FAX NO. *(Optional):* (626) 282-0522<br>E-MAIL ADDRESS *(Optional):* prod@attorneyprod.com<br>ATTORNEY FOR *(Name):* Plaintiff Diane Weinsheimer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Diane Weinsheimer

DEFENDANT/RESPONDENT: MTC Financial Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>30-2016-00846567-CU-OR-CJC |
|---|---|

TO *(insert name of party being served):* Shellpoint Mortgage Servicing

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 04/27/2016

Nick Stahl
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

Civil Case Cover Sheet

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patricia Rodriguez Esq. SBN 270639<br>Rodriguez Law Group, Inc.<br>1961 W. Huntington Drive Suite 201<br>Alhambra, California 91801<br>TELEPHONE NO.: (626) 888-5206   FAX NO. *(Optional):* (626) 282-0522<br>E-MAIL ADDRESS *(Optional):* prod@attorneyprod.com<br>ATTORNEY FOR *(Name):* Plaintiff Diane Weinsheimer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Diane Weinsheimer

DEFENDANT/RESPONDENT: MTC Financial Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>30-2016-00846567-CU-OR-CJC |
|---|---|

TO *(insert name of party being served):* Shellpoint Mortgage Servicing

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 04/27/2016

Nick Stahl
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
    Civil Case Cover Sheet

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
### *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MTC FINANCIAL INC DBA TRUSTEE CORPS [Additional Defendants Attached]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Diane Weinsheimer, an individual

</td><td>

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/15/2016** at 02:17:32 PM

Clerk of the Superior Court
By Truemy Vu, Deputy Clerk

</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Central Justice Center - 700 Civic Center Drive West<br>Santa Ana, CA 92701 | CASE NUMBER:<br>30-2016-00846567-CU-OR-CJC<br><br>Judge Sheila Fell |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Patricia Rodriguez, 1961 W Huntington Drive, Suite 201, Alhambra, CA 91801 (626) 888-5206

| DATE: 04/15/2016<br>*(Fecha)* | ALAN CARLSON, Clerk of the Court | Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*          Truemy Vu

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):*

   under: [✓] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Weinsheimer v. MTC Financial Inc dba Trustee Corps | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC; SHELLPOINT MORTGAGE
SERVICING; THE BANK OF NEW YORK MELLON AS THE TRUSTEE FOR THE CHL MORTGAGE
PASS THROUGH TRUST 2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005
HYB5; AND DOES 1 THROUGH 20, INCLUSIVE,

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patricia Rodriguez Esq. SBN 270639<br>RODRIGUEZ LAW GROUP INC.<br>1961 W. Huntington Drive, Suite 201<br>Alhambra, California, 91801<br>TELEPHONE NO.: (626) 888-5206    FAX NO.: (626) 282-0522<br>ATTORNEY FOR *(Name):* Plaintiff Diane Weinsheimer | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**04/15/2016** at 02:17:32 PM<br>Clerk of the Superior Court<br>By Trucmy Vu, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: Same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Weinsheimer v. MTC Financial Inc dba Trustee Corps et. al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2016-00846567-CU-OR-CJC |
| | | JUDGE: Judge Sheila Fell<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify):* Six

5. This case [ ] is [✓] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 13, 2016

Patricia Rodriguez Esq.
_____
(TYPE OR PRINT NAME)        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1   Patricia Rodriguez Esq., SBN 270639
2   **RODRIGUEZ LAW GROUP, INC.**
    1961 W. Huntington Dr., Suite 201
3   Alhambra, California 91801
    Office Phone: (626) 888-5206
4   Fax: (626) 282-0522

5   Attorney for Plaintiff,
6   Diane Weinsheimer

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/15/2016** at 02:17:32 PM
Clerk of the Superior Court
By Trucmy Vu, Deputy Clerk

7               **SUPERIOR COURT OF CALIFORNIA**

8                **FOR THE COUNTY OF ORANGE**

9

| | |
|---|---|
| 10  DIANE WEINSHEIMER, an individual | Case No.: 30-2016-00846567-CU-OR-CJC  Judge Sheila Fell |
| 11                  Plaintiff, | **VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF:** |
| 12       vs. | |
| 13  MTC FINANCIAL INC DBA TRUSTEE  CORPS; MORTGAGE ELECTRONIC | 1.   WRONGFUL FORECLOSURE |
| 14  REGISTRATION SYSTEMS INC;  SHELLPOINT MORTGAGE SERVICING; | 2.   VIOLATION OF CIVIL CODE  §2934(a) |
| 15  THE BANK OF NEW YORK MELLON AS  THE TRUSTEE FOR THE CHL | |
| 16  MORTGAGE PASS THROUGH TRUST  2005-HYB5, MORTGAGE PASS | 3.   VIOLATION OF CIVIL CODE  §2924(a)(6) |
| 17  THROUGH CERTIFICATES, SERIES 2005  HYB5; AND DOES 1 THROUGH 20, | 4.   VIOLATION OF CIVIL CODE  §2924.17 |
| 18  INCLUSIVE, | |
| 19 | 5.   VIOLATION OF 15 U.S.C §1641(g)  – TRUTH IN LENDING ACT |
| 20                  Defendants. | |
| 21 | 6.   VIOLATION OF CALIFORNIA  BUS. & PROF. CODE SECTIONS  17200 ET SEQ |
| 22 | |
| 23 | |
| 24 | **DEMAND FOR JURY TRIAL** |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

Plaintiff, DIANE WEINSHEIMER hereby alleges the following based on her personal knowledge, information and belief:

1. Plaintiff has resided in the County of Orange, State of California at all relevant times herein.

2. The home is situated in the City of Newport Beach, County of Orange, State of California. The address is 5 Encore Court, Newport Beach, California 92663 ("Property").

3. SECURITY NATIONAL MORTGAGE COMPANY (hereinafter "SECURITY NATIONAL"), is a corporation authorized to do business in the State of California. SECURITY NATIONAL is the original mortgage lender for the loan used to purchase the property.

4. The "Deed of Trust" regarding the real property lists the Plaintiff as the borrower and SECURITY NATIONAL as the lender (recorded 06/30/2005, as instrument number 2005000510215 in the Office of the Recorder, Orange County, California).

5. Defendant, MTC FINANCIAL INC (hereinafter "MTC") is the alleged current foreclosure trustee for this "Deed of Trust.". MTC is conducting business in the county of Orange, State of California.

6. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC (hereinafter "MERS") is and at all times herein mentioned, conducting business in the county of Orange, State of California. MERS is described in the original deed of trust as the nominee and beneficiary. MERS is an online member only database of alleged transfers of residential mortgages through non recorded assignments. Plaintiff is informed and believes, and thereon alleges that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. ("MERS") is allegedly named in the Deed of Trust as acting solely as a "nominee" for the lender as the original beneficiary of the security interest Deed of Trust.

7. LAWYERS TITLE COMPANY is the alleged trustee for the original deed of trust.

2

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

8. Plaintiff is informed and believes and upon such information and belief alleges that Defendant SHELLPOINT MORTGAGE SERVICING (hereinafter "SHELLPOINT") was and is at all relevant times a national banking association organized under the laws of the United States and doing business in the State of California as a residential loan servicer. It is the Plaintiff's belief that Defendant SHELLPOINT is the alleged servicer of the Plaintiff's loan.

9. Plaintiff is informed and believes, and thereon alleges that Defendant THE BANK OF NEW YORK MELLON is an institution authorized to do business in the State of California. Plaintiff alleges that THE BANK OF NEW YORK MELLON is the alleged trustee for the securitized trust known as the CHL MORTGAGE PASS THROUGH TRUST 2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005 HYB5.

10. Plaintiff is informed and believes, and thereon alleges that Defendant THE BANK OF NEW YORK MELLON is the alleged trustee for the securitized trust known as the CHL MORTGAGE PASS THROUGH TRUST 2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005 HYB5 allegedly received all beneficial interest under the original Deed of Trust through a "Assignment of Deed of Trust" which was allegedly recorded March 26, 2015 as instrument number 2015000156443 in the Official Records of Orange County California.

11. The true name or capacities, whether individual, corporate, associate, or otherwise, of the Defendants Does 1 through 20 are unknown to Plaintiff at this time, who therefore sues such Defendants by such fictitious names, and will amend this Complaint to allege their true names and capacities when said Defendants are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said fictitiously named Defendants is responsible for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately caused by said Defendants.

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

12. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants sued herein as DOE were the agents, servants, employees or employers of their Co-Defendant, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, employees, or employers and with the permission and consent of their Co-Defendant.

## FACTUAL ALLEGATIONS

13. On or about June 27, 2005, Plaintiff Diane Weinsheimer executed a non-negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $640,000.00. The parties to the original note were the Plaintiff and SECURITY NATIONAL MORTGAGE CORPORATION only. No other Defendants were an overall party to the Deed of Trust.

14. The Deed of Trust was recorded as document number 2005000510215 in the Office of the Recorder, Orange County, California on 06/30/05. (**Exhibit "A"**).

15. On May 19, 2010 Recontrust Company recorded a "Substitution of Trustee and Assignment of Deed of Trust" as document 2010000234986 in Orange County, California. The alleged Substitution of Trustee and Assignment of Deed of Trust alleged to substitute Recontrust Company as Trustee under the Deed of Trust and THE BANK OF NEW YORK "all beneficial interest under that certain Deed of Trust." (**Exhibit "B"**).

16. On November 7, 2011 Bank of America recorded an "Assignment of Deed of Trust" as document 2011000562208 in Orange County, California. The alleged Assignment of Deed of Trust alleged to "grant, assigns and transfers to THE BANK OF NEW YORK MELLON all beneficial interest under that certain Deed of Trust." (**Exhibit "C"**).

17. On March 26, 2015 TD Service Company recorded an "Assignment of Deed of Trust" as document 2015000156443 in Orange County, California. The alleged Assignment of Deed of Trust alleged to "grant, assigns and transfers to THE BANK OF NEW YORK MELLON all beneficial interest under that certain Deed of Trust." (**Exhibit "D"**).

4

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

18. On July 23, 2015 Old Republic Default Management Services recorded a "Substitution of Trustee" as document 20150000384072 in Orange County, California. The alleged Substitution of Trustee alleged to substitute Old Republic Default Management Services as Trustee under the Deed of Trust. **(Exhibit "E")**.

19. On November 5, 2015 TRUSTEE CORPS recorded a "Substitution of Trustee" as document 20150000575481 in Orange County, California. The alleged Substitution of Trustee alleged to substitute MTC FINANCIAL DBA TRUSTEE CORPS as Trustee under the Deed of Trust. **(Exhibit "F")**.

20. Additionally, TRUSTEE CORPS, has recorded and served a "Notice of Default and Election To Sell Under Deed of Trust" in the Official Records of Orange County California on December 9. 2015 as instrument number 2015000624574. **(Exhibit "G")**.

21. Thereafter, Defendants scheduled a pre-foreclosure trustee's sale of the Plaintiffs property on April 7, 2016 as Trustee Sale # CA 08003185-15-1.

22. Based on the following, Plaintiff alleges that the Note and Deed of Trust for the subject property was not properly endorsed and assigned to Defendant THE BANK OF NEW YORK MELLON as the purported trustee for the Securitized Trust in accordance with the Defendant's own Pooling and Servicing Agreements ("PSA").

23. Plaintiff alleges that the promissory note was made **only payable** to SECURITY NATIONAL MORTGAGE COMPANY.

24. The Securitized Trust in this matter, is a common law trust formed pursuant to New York law. The corpus of the Trust purportedly consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate. The Trust has no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment.

25. Plaintiff alleges that the origination of the loan was done as a form of predatory lending.

26. The Pooling and Servicing Agreement ("PSA") for the Trust is a public document on file with the SEC. Plaintiff alleges that one purpose of the PSA is to document that the

5

Defendants originate and acquire mortgage loans in the regular course of business and desire by the PSA to confirm the terms and conditions under which the Trust will "acquire the mortgage loans" so originated.

27. Plaintiff is informed and believes, and thereon alleges, that the Trust issued the investment bonds in the mortgage-backed Trust identified herein.  Said securities were duly registered with the Securities and Exchange Commission.

28. Pursuant to relevant sections of the PSA, prior to the Closing Date of the Trust, the Depositor agreed to deliver to the Custodian on behalf of the Trustee and for the benefit of the Certificate holders, the original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee.

29. Overall, Plaintiff alleges that Defendants have been attempting to collect and enforce a debt without any legal right to do so.

30. Plaintiffs allege that in order for Defendant THE BANK OF NEW YORK MELLON or any other entity to have a valid and enforceable secured claim against Plaintiff's Home, they must prove and certify to all parties that, among other things:

    a. There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction as follows;

- From originator/lender to
- The sponsor/seller to the depositor to
- The trustee THE BANK OF NEW YORK MELLON.

    b. Defendants have actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed;

    c. That there was a complete and unbroken chain of endorsements and transfers of the Note and Deed of Trust, from and to each party to the securitization transaction; and

6

     d.  Defendants have actual physical possession of the Note and Deed of Trust at that point in time, when all endorsements and assignments had been completed.

31. Plaintiff alleges that absent such proof THE BANK OF NEW YORK MELLON cannot demonstrate that it had perfected its security interest in the Property that is the subject of this action.

32. Therefore, Defendants should be estopped and precluded from asserting any secured or unsecured claim in this case.

33. The following deficiencies exist, in the "True Sale" and securitization process as to Plaintiffs Note and Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

     a.  The splitting or separation of title, ownership and interest in Plaintiff's Note and Deed of Trust;

     b.  When the loan was sold to each intervening entity, there were no Assignments or Endorsements of the Deed of Trust or Note to or from any intervening entity at the time of the sale.  Therefore, "True Sales" could not and did not occur;

     c.  The failure to properly endorse, assign and transfer the beneficial interest in the Plaintiffs Note together with the Deed of Trust to THE BANK OF NEW YORK MELLON.

34. Therefore it is Plaintiff's allegation that none of the Defendants in this matter hold a perfected and secured claim in the Home **and** that any/all of the Defendants are estopped/precluded from asserting an unsecured claim against the Plaintiff's home.

35. Plaintiff notes that in lieu of valid assignments, trusts (like the one noted in this matter) continue to rely on alleged assignments specially made by their own law firms and mortgage default service companies that are void assignments.

7

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

36. However, courts across the United Stated are finally starting to uncover these fraudulent assignments and are requiring that the foreclosing trusts prove that they own the mortgage and note in the foreclosure action, without relying on assignments that misrepresent the date of the actual transfer to the trust and the authority of the signers of the original lenders.

37. According to the recently decided California Supreme Court case of <u>Yvanova v. New Century Mortgage Corporation</u>, the Plaintiffs indeed have standing to (1) challenge the validity of a loan assignment to a foreclosing entity and (2) challenge the authority of the foreclosing entity that wishes to go forward with a trustee sale. Specifically, the <u>Yvanova v. New Century Mortgage Corporation states as follows;</u>

*"A homeowner who has been foreclosed on by one with no right to do so has suffered an injurious invasion of his or her legal rights at the foreclosing entity's hands. No more is required for standing to sue."*

*For these reasons, we conclude Glaski, supra, 218 Cal.App.4th 1079, was correct to hold a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust."* <u>Yvanova v. New Century Mortgage Corp., 2016 Cal. LEXIS 956, *3 (Cal. Feb. 18, 2016)</u>

38. Overall, it seems as if all of the Defendants included in this action have acted (in concert or alone) with the common goal to induce Plaintiff by giving the appearance of legitimacy in their lending and collection practices while at the same time deceiving Plaintiff to alter her position in accepting this loan.

39. Had Plaintiff known that the Defendants were operating in violation of the law through the securitization of the loan or in violation of any other lending, State or Federal laws, Plaintiff would have never done business with the Defendants, and would not be in the position she finds herself in today.

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

### FIRST CAUSE OF ACTION
### WRONGFUL FORECLOSURE
(Asserted Against All Defendants)

40. Plaintiff hereby incorporates and herein by reference, all paragraphs contained in this complaint as if the same were fully set forth at length herein.

41. In the instant matter before the Court, Defendants are taking express action to go forward with a wrongful foreclosure sale of the Plaintiffs property as evidenced by the (1) the recording of a "Notice of Default and Election To Sell Under Deed of Trust" on December 9, 2015 and (2) that Defendants scheduling a pre foreclosure trustee's sale of the Plaintiffs property on April 7, 2016 as Trustee Sale # CA 08003185-15-1.

42. As noted above the recently decided California Supreme Court case of Yvanova v. New Century Mortgage Corporation, the Plaintiffs have standing to (1) challenge the validity of a loan assignment to a foreclosing entity and (2) challenge the authority of the foreclosing entity that wishes to go forward with a trustee sale. *Yvanova v. New Century Mortgage Corp., 2016 Cal. LEXIS 956, *3 (Cal. Feb. 18, 2016).*

43. Therefore, it is Plaintiffs' allegation that no documents or records can be produced that demonstrate that prior to the closing date of the Deed of Trust, the Note or Deed of Trust in this matter was duly transferred and delivered to the Securitized Trust including all intervening assignments, as required by the Securitized Trust's governing documents.

44. Further, any purported assignments evidencing an assignment was defective at the time the alleged assignment was executed. Therefore, Plaintiff alleges that the Assignment purporting to transfer beneficial interests to THE BANK OF NEW YORK MELLON as trustee for the Securitized Trust occurred well after the Closing Date of the Securitized Trust or any other period allowed under the governing documents for the Securitized Trust. For the above reason, the purported assignments in this matter are void and not just voidable.

9

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

45. Therefore, Plaintiff alleges that the Assignment purporting to transfer beneficial interests to THE BANK OF NEW YORK MELLON as trustee for the Securitized Trust is VOID.

46. Plaintiff further alleges that even if the Note and Deed of Trust had been transferred into the Trust by the closing date, the transaction is still VOID as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party. This means that four assignments and four endorsements need to be delivered to the trustee by the custodian prior to the closing date of the Deed of Trust.

47. Documents filed with the SEC by the securitization participants claim that the Note and Deed of Trust at issue in this case were allegedly sold, transferred and securitized by Defendants, with other loans and mortgages into the Trust, which is a Common Law Trust formed pursuant to New York Law.

48. Plaintiff alleges that the purported transfers of Plaintiff's debt or obligations did not comply with New York law, and/or other laws and statutes, and thus, do not constitute valid and enforceable "True Sales." Therefore, any security interest in the Plaintiff's Home was never perfected.

49. Furthermore, the entity claiming interest in the Plaintiffs Note is not the beneficiary of the Note or Deed of Trust.

50. The alleged beneficiary of Plaintiff's Deed of Trust does not have the requisite title, perfected security interest or standing to proceed. Therefore the alleged beneficiary of Plaintiff's Deed of Trust is not the real party in interest with regard to any action to be taken against the Plaintiff's Home.

51. Plaintiff alleges, that pursuant to the terms of the PSA, the Mortgage Originator agreed to the transfer and endorsement to the Trustee for the Securitized Trust without recourse, including all intervening transfers and assignments, all of its right, title and

interest in and to the mortgage loan to Plaintiff herein and all other mortgage loans identified in the PSA.

52. Plaintiff alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, Sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiff's Home herein.

53. Plaintiff alleges, that this unlawful, improper and oppressive method of attempting to securitize the Plaintiff's Note has caused the value of the Home to significantly decrease and has, in effect, caused Plaintiff to lose either all or a substantial part of the equity she would have created in her Home after making payments.

54. As noted above the recently decided California Supreme Court case of <u>Yvanova v. New Century Mortgage Corporation</u>, "when a property has been sold at a trustees sale at the direction of an entity with no legal authority to do so, the borrower has suffered a cognizable injury." *Yvanova v. New Century Mortgage Corp., 2016 Cal. LEXIS 956, \*3 (Cal. Feb. 18, 2016).*

55. Defendants are attempting to foreclose without any legal authority or standing to do so, and in violation of State and Federal laws which were specifically enacted to protect consumers such as the Plaintiff from the type of abusive, deceptive, and unfair conduct in which Defendants engaged, which are detailed herein, by failing to follow the procedures prescribed by such laws to foreclose.

56. In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks an Order enjoining the Defendants from carrying out a foreclosure sale of the Home and Declaratory Relief as to whether the Deed of Trust secures any obligation of Plaintiff as to Defendants, and whether the Defendants, can foreclose or collect mortgage payments from Plaintiff.

11

57. Plaintiff alleges that all Defendants have been unjustly enriched from their collection efforts, as Defendants are not due and owed any monies regardless of their protestations.

58. Plaintiff alleges that Defendants are attempting to take advantage of the complex structured financial system to defraud yet another homeowner and mislead Plaintiff into believing that Defendants are entitled to foreclose on the Home.

### SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2934(a)
(Asserted Against All Defendants)

59. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff is informed and believes, and thereon alleges, that in this matter a "Notice of Default and Election To Sell Under Deed of Trust" was recorded on December 9, 2015. **(Exhibit "G")**

61. However, it is Plaintiffs belief that the Defendants have engaged in wrongful conduct through the attempted recording of multiple invalid substitution of trustees and assignments of deed of trust which make the Notice of Default both invalid and recorded in bad faith.

62. Therefore, Plaintiff alleges that, THE BANK OF NEW YORK MELLON did not have standing to commence foreclosure proceedings.

63. Additionally, Plaintiff alleges that, the original trustee under the deed of trust, was likely not aware that foreclosure proceedings had been initiated as required under *Civil Code* §2934a(c).

64. Civil Code §2934a(c) requires the substitution of Trustee to be mailed to the original foreclosure trustee. Upon information and belief, the Plaintiff alleges that no notice was sent to the original foreclosure trustee.

65. Additionally, under California Civil Code §2934a(c) requires the substitution of Trustee to be mailed to the trustee then of record.

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

66. As a proximate cause of this violation of the non-judicial foreclosure statute, the Plaintiff was irreparably injured in an amount not yet ascertained, but at least the value of the Home.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL CODE OF PROCEDURE §2924(a)(6)
(Asserted Against All Defendants)

67. Plaintiff hereby incorporates and herein by reference, all paragraphs contained in this complaint as if the same were fully set forth at length herein.

68. California Civil Code section 2924(a)(6) states
   a. "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest."

69. It further states: No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

70. California Civil Code 2924(a)(6) states that for an entity to properly record a notice of default, that entity must be entitled to enforce both the Note and the Deed of Trust.

71. Yet, Defendants THE BANK OF NEW YORK MELLON, MTC FINANCIAL INC and SHELLPOINT MORTGAGE SERVICING were not and are not the holder of a beneficial interest under the Mortgage or Deed of Trust as the loan was taken out with INDYMAC in 2006

72. Additionally, Defendants THE BANK OF NEW YORK MELLON, MTC FINANCIAL INC and SHELLPOINT MORTGAGE SERVICING were not and are not an agent of the holder of a beneficial interest under the Mortgage or Deed of Trust that was taken out with SECURITY NATIONAL MORTGAGE COMPANY in 2005

73. Yet, Defendants THE BANK OF NEW YORK MELLON, MTC FINANCIAL INC and SHELLPOINT MORTGAGE SERVICING are trying to go attempt to foreclose on the

13

Plaintiffs property as evidenced by the recording of a "Notice of Default and Election To Sell Under Deed of Trust" on December 9, 2015.

74. Since THE BANK OF NEW YORK MELLON, MTC FINANCIAL INC and SHELLPOINT MORTGAGE SERVICING are NOT the original trustee or the substituted trustee under the original Deed of Trust, they do not have the standing to record a Notice of Default against the Plaintiff.

75. As a direct and proximate result of the violation of CCP 2924(a)(6) Plaintiff has suffered, and continues to suffer, statutory, general and special damages in an amount to be determined at trial, but not less than $5,000,000.

76. Per the statute Plaintiff is also entitled to reasonable attorney's fees and cost.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17**
(AGAINST ALL DEFENDANTS)

77. Plaintiff re-alleges and incorporates the allegations contained in all paragraphs of this complaint, as though fully set forth herein.

78. California Civil Code § 2924.17(b) states as follows:

> *"Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclosure, including the borrower's loan status and loan information."*

79. Here, Plaintiff is informed and believes, and thereon allege that the following documents were recorded and served;

• "Notice of Default and Election To Sell Under Deed of Trust" recorded on December 9, 2015 by TRUSTEE CORPS (20150006244574 in the Official Records of Orange County California)

80. Defendants did not review Plaintiff's file with competence and reliable evidence before recording the "Notice of Default and Election To Sell Under Deed of Trust."

81. Defendants did not review Plaintiff's file competently including all evidence to "substantiate the borrower's default and the right to foreclosure, including the

14
VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

borrower's loan status and loan information" and correct assignment and/or endorsements to the investor. If Defendants had reviewed the evidence they would have seen that by attempting to serve and record the "Notice of Default and Election To Sell Under Deed of Trust" was in violation of 2924.17.

82. As a result of Defendants improper handling of Plaintiff's file, Plaintiff's file was not reviewed competently and with reliable evidence, which resulted in the attempted recording and filing of a "Notice of Default" and a "Notice of Trustee's Sale" .

83. Further, it is Plaintiff's allegation that the actions of the Defendants were done with knowledge and malice.

84. Per the statute, Plaintiff is entitled statutory damages, reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION:
### VIOLATION OF 15 U.S.C §1641(g) – TRUTH IN LENDING ACT
(AGAINST ALL DEFENDANTS)

85. Plaintiff hereby alleges and incorporates herein by reference, all paragraphs contained in this complaint as if the same were fully set forth at length herein.

86. Plaintiff alleges, that the subsequent transfer of an interest in the Plaintiff's loan and lack of notice of the transfer is a violation of the Truth and Lending Act section 1641(g).

87. Alternatively, if Defendants do not have interest in the property and are "new" creditors then they are in violation of the Truth and Lending Act section 1641(g).

88. The new subsection (g) added to § 131 of TILA states:
> (1) In general - In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including —
>
> A. the identity, address, telephone number of the new creditor;
> B. the date of transfer;
> C. how to reach an agent or party having authority to act on behalf of the new creditor;

15

     **D.** the location of the place where transfer of ownership of the debt is recorded; and any other relevant information regarding the new creditor.

89. Plaintiff did not discover the violation of 15 U.S.C § 1641 until they obtained counsel who discovered that the Loan had been allegedly assigned by the Defendants.

90. Because, Defendant THE BANK OF NEW YORK MELLON concealed their ownership in the Deed of Trust and transfer/assignment of the Deed of Trust the equitable tolling for statute of limitation should be applied.

91. Plaintiff could not have with reasonable diligence discovered that Defendants claimed an ownership interest because they did not receive a copy of the assignment as required by law, and were not required to check the Recorders office for such notice.

92. Furthermore, Plaintiff was receiving material that would have led a reasonable person to believe their creditor was another entity, specifically SHELLPOINT MORTGAGE SERVICING.

93. Therefore, any statute of limitation on the claim was equitably tolled.

94. Plaintiffs never received a notice in compliance with TILA 1641 (g).

95. Thus, Defendants violated § 131(g) of 15 U.S.C. §1641 and are subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages pursuant to 15 U.S.C. §1640.

96. Actual damages include but are not limited to the over calculation and overpayment of interest on the Loan, the cost of repairing Plaintiff's credit, costs associated with removing the cloud on the property title, cost of a securitization audit, loss of equity, and attorneys' fees and costs, and any amount to be proven at trial.

97. As noted above the recently decided California Supreme Court case of <u>Yvanova v. New Century Mortgage Corporation</u>, "when a property has been sold at a trustees sale at the direction of an entity with no legal authority to do so, the borrower has suffered a cognizable injury." <u>*Yvanova v. New Century Mortgage Corp., 2016 Cal. LEXIS 956, *3 (Cal. Feb. 18, 2016).*</u>

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

### SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA BUS. & PROF. CODE SECTIONS 17200 ET SEQ
(Asserted against All Defendants)

98. The Plaintiff alleges that Defendants engaged in deceptive business practices as defined in the Code section above, by engaging in deceptive business practices by attempting to collect on a debt that was void and unenforceable.

99. Plaintiff further alleges that each of the Defendants above also engaged in deceptive business practices by fraudulently recommending, offering, marketing, accepting, purchasing and or collecting on a debt/mortgage that they each knew or should have known was void due to the illegal nature of the Defendants trying to claim they hold a perfected and secured claim in the Plaintiffs Home. The Defendants continued reliance on invalid assignments and trusts (like the one noted in this matter) show their continued use of alleged assignments specially made by their own law firms and mortgage default service companies that are void assignments - a violation of the public policy of promoting home ownership and preventing foreclosures (Cal. Civil Code § 2934(a), 2924(a)(6), 2924.17 and USC § 1641(g)).

100.     The acts of the Defendants above, constitute unfair business practices and/or acts, as defined in California Business and Professions Code §17200, as the acts were in violation of California statutory law, Civil Code §§ 1667 (as the acts were illegal), 1708 (as the acts were injurious to the Plaintiff and to the public at large, in that they were designed to cause a certain or likely foreclosure), 1709 (as the Plaintiff was willfully induced to change her financial position to her detriment,) and were also in violation of established California public policies to promote and preserve home ownership and to prevent foreclosures. (Cal. Civil Code § 2934(a), 2924(a)(6), 2924.17 and USC § 1641(g)).

101.     Plaintiff further alleges that the acts of the Defendants were intentional and malicious, as they knew or should have known that the loan agreements were in violation of numerous California Statutes (§ 2934(a), 2924(a)(6), 2924.17), and was

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

also in violation of established California public policies to promote and preserve home ownership and to prevent foreclosures.

102.    The failure of Defendants to comply with State and Federal law also appears to be part of their company policies of seeking to deny such Federal benefits to those such as the Plaintiff, who would otherwise qualify for the benefits, but for the fraudulent conduct of the Defendants, who willfully targeted the Plaintiff for predatory lending and servicing.

103.    Lastly, the Plaintiff alleges that the acts were also oppressive and substantially injurious to consumers, such as the Plaintiff, in that they were committed with the intent and/or knowledge that the commission of the acts would result in the *certain* default of the subject loan and possible forfeiture of the Plaintiff's home and equity. The acts of Defendants in furtherance of its fraudulent and deceitful corporate polices.

104.    As a direct and proximate cause of the acts of the named Defendants, the Plaintiff has suffered by struggling to avoid becoming delinquent on her mortgage.  She has also suffered consequential damages in an amount to be fully determined at time of trial, but in an amount exceeding $100,000.00 to date and is entitled to all statutory damages as provided in the above entitled Code section, including attorney's fees and costs.

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as follows:

1.  For all compensatory damages incurred according to proof;

2.  For all consequential damages incurred according to proof;

3.  For all special damages according to proof;

4.  For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

5.  For all statutory damages as applicable;

8.  For any prejudgment or other interest according to law;

9.  For costs and reasonable attorney's fees; and

10. For such other relief that the court may deem just and proper.

Dated: April 13, 2016                    RODRIGUEZ LAW GROUP INC.

By: Patricia Rodriguez, Esq.
Attorney for Plaintiff
DIANE WEINSHEIMER

19

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

## VERIFICATION

State of California        )
                          )
County of Orange          )

    I, **DIANE WEINSHEIMER**, am the Plaintiff in this action. I have read the foregoing Complaint. I am informed and believe and on that ground allege that matters stated therein are true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 13, 2016, __Newport Beach, California.


DIANE WEINSHEIMER
Plaintiff

20

VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

# EXHIBIT A

*Lawyers Title*

After Recording Return To:

SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123

LOAN NO.: 312315

ESCROW NO.: 05326141-28

TITLE NO.: 05326141-28

PARCEL NO.: 932-58-245

MIN NO.: 1000317-0000312315-1

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

75.00

2005000510215 04:30pm 06/30/05
117 48 D11 24

0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

——— [SPACE ABOVE THIS LINE FOR RECORDING DATA] ———

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     JUNE          27   ,    2005   , together with all Riders to this document.

(B) "Borrower" is
 DIANE WEINSHEIMER, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.

(C) "Lender" is
 SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

Lender is a  A UTAH CORPORATION                                organized and existing under the laws
of                UTAH                . Lender's address is
 5300 SOUTH 360 WEST SUITE 150; MURRAY, UTAH 84123

(D) "Trustee" is
 LAWYERS TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Initials *DW*

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105          Page 1 of 15
          ORIGINAL

(F) **"Note"** means the promissory note signed by Borrower and dated **JUNE      27** , **2005** . The Note states that Borrower owes Lender _____
**SIX HUNDRED FORTY THOUSAND AND 00/100——————————————————** Dollars
(U.S. $ _____ **640,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY      01** , **2035** .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [X] Condominium Rider    [X] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Assumption Rider
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider    [ ] Inter Vivos Trust Rider
[ ] Other(s) [specify]:

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

LOAN NO.: 312315                                    Initials _____ ___ ___ ___ ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCAI-3105                  Page 2 of 15
                                        ORIGINAL

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ **COUNTY** _____ of _____ **ORANGE** _____ :
<br>[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

ADJUSTABLE RATE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF
TWO PAGE CONDOMINIUM RIDER ATTACHED HERETO AND MADE A PART HEREOF
SECOND HOME RIDER ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.: 932-58-245

which currently has the address of  5 ENCORE COURT _____ ;
<br>[Street]

NEWPORT BEACH _____ , California   92663 _____ ("Property Address"):
<br>[City/Area]                                  [Zip Code]

   **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   **BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   **THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

LOAN NO.:   312315                                        Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005  1/01
*DocPrep Services, Inc.*  FORM - MDOTCA1-3105                    Page 3 of 15
                                                               ORIGINAL

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

LOAN NO.:  312315                                    Initials _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                Page 4 of 15
                                                    ORIGINAL

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obigated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

LOAN NO.:   312315                                    Initials

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been

LOAN NO.:   312315                                        Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005  1/01
*DocPrep Services, Inc.* FORM - MDOTCAJ-3105                Page 6 of 15
                                                         ORIGINAL

completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN NO.:   312315                                      Initials _DW_ ___ ___ ___ ___ ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                Page 7 of 15
                                                           ORIGINAL

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

LOAN NO.:   312315                                     Initials _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005  1/01
*DOCPREP SERVICES, INC.*  FORM - MDOTCA1-3105                Page 8 of 15
                                                       ORIGINAL

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

LOAN NO.: 312315                                        Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                    Page 9 of 15
                                                              ORIGINAL

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

LOAN NO.:    312315                                         Initials ___ ___ ___ ___ ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005  1/01
*DocPrep Services, Inc.* FORM - MDOTCA1-3105                    Page 10 of 15
ORIGINAL

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:   312315                                    Initials _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS              Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                    Page 11 of 15
                                                   ORIGINAL

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

LOAN NO.:   312315                                    Initials _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.*  FORM - MDOTCAI-3105                    Page 12 of 15
                                        ORIGINAL

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligaton on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the Notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

LOAN NO.:   312315                                    Initials PN

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Diane Weinsheimer_____ (Seal)
                                         DIANE WEINSHEIMER            -Borrower

_____        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

LOAN NO.:   312315

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
DOCPREP SERVICES, INC.   FORM - MDOTCA1-3105          Page 14 of 15
                                                     ORIGINAL

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF CALIFORNIA
COUNTY OF *Contra Costa*                    } SS

On _6/28/05_____ before me, _Laura Zaragoza, Notary Public_ personally appeared,
                                            (Notary Name and Title)
**DIANE WEINSHEIMER**
_____

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Laura Zaragoza_

(Notarial Seal)

LAURA ZARAGOZA
Commission # 1527167
Notary Public - California
Contra Costa County
My Comm. Expires Nov 16, 2008

LOAN NO.:   312315

## REQUEST FOR RECONVEYANCE

**TO TRUSTEE:**

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____      _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3005  1/01
*DOCPREP SERVICES, INC.*  FORM - MDOTCA1-3105                Page 15 of 15
                                                            ORIGINAL

```
SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123
APN # 932-58-245
LOAN NO.:    312315
ESCROW # 05326141-28
TITLE ORDER # 05326141-28
```

———————————————— [SPACE ABOVE RESERVED FOR RECORDER] ————————————————

ATTACHED TO DEED OF TRUST / MORTGAGE DATED:    JUNE    27, 2005

Loan No:   312315

Property Address:

5 ENCORE COURT; NEWPORT BEACH, CALIFORNIA 92663

# EXHIBIT A

## LEGAL DESCRIPTION

Initials _____ _____ _____

*DOCPREP SERVICES, INC.* FORM - EXHIBITA-0066        ORIGINAL

File No: 05326141

# EXHIBIT "A"

All that certain real property situated in the County of Orange, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

Unit 245 of that certain Condominium Project, described in that certain Condominium Plan recorded in Book 10791, Page 53 of Official Records, in the County of Orange of California (such plan being hereinafter referred to as the "Condominium Plan") and as defined in that certain Declaration of Covenants, Conditions and Restrictions for Newport Crest Homeowners Association recorded in Book 10348, Page 693 of Official Records, and in amendment recorded in Book 10384, Page 461 of Official Records and amendment recorded in Book 10793, Page 518 of Official Records, (the Declaration) and in the Declaration of Annexation for Lot 4 of Tract No. 7817 (the Declaration of Annexation) recorded in Book 10381, Page 551 of Official Records, in the office of the County Recorder of said County.

PARCEL 2:

An undivided $1/104^{th}$ interest in and to the Common Area as defined in the Declaration and in the Declaration of Annexation, being Lot 4 of Tract No. 7817, in the City of Newport Beach, as per map recorded in Book 308, Pages 33 and 34 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

PARCEL 3:

Exclusive easements appurtenant to said Unit 245 all as more specifically defined in the Condominium Plan and the Declaration.

PARCEL 4:

A non-exclusive easement to use the Common Area and facilities of the Project which have been or will be developed on the following described real property.

(1) Lot 1 of Tract No. 7852, in the City of Newport Beach, as per map recorded in Book 302, Pages 7 to 9 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

Except therefrom that portion of land included within Parcel 1 as shown on a map recorded in Book 45, Page 26 of Parcel Maps, in the office of the County Recorder of said County.

File No: 05326141

(2)  Lots 1, 2 and 3 of Tract No. 7817, in the City of Newport Beach, as per map recorded in Book 308, Pages 33 and 34  of Miscellaneous Maps, in the office of the County Recorder of said County.

(3)  A membership in Newport Crest Homeowners Association owners of record of Parcel 1 as shown on that certain Parcel Map recorded in  Book 45, Page 26 of Parcel Maps, in the office of the County Recorder of said County, known as Common Area B, the recreational lot.

Excepting therefrom, however, any and all exclusive easements appurtenant to all Condominium Units excepting said Unit  245 now or hereafter referred to in the Declaration or the Declaration as amended.

Assessor's Parcel Number:        **932-58-245**

———————————————————— [SPACE ABOVE RESERVED FOR RECORDER] ————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS FIXED/ADJUSTABLE RATE RIDER** is made this __27TH__ day of ___JUNE_____ , ___2005__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to _____
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:
5 ENCORE COURT
NEWPORT BEACH, CALIFORNIA 92663
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of ___6.125__ %.  The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of __JULY_____ , __2010___ , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

LOAN NO.:   312315                                   Initials ___ ___ ___ ___ ___

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-INTEREST ONLY
FE-4266 (0204)                                    Page 1 of 3
*DOCPREP SERVICES, INC.* FORM - FE4266-4101                ORIGINAL

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ TWO AND 250/1000_____ percentage points ( _____2.250____ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than _____11.125_____ % or less than _____2.250_____ %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than _____11.125_____ %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

**1.** Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN NO.:  312315                                    Initials _____ _____ _____ _____ _____

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-INTEREST ONLY
FE-4266 (0204)                                    Page 2 of 3
*DOCPREP SERVICES, INC.* FORM - FE4266-4101                      ORIGINAL

**2.** When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)          _____(Seal)
                                    -Borrower                                        -Borrower
DIANE WEINSHEIMER

_____(Seal)          _____(Seal)
                                    -Borrower                                        -Borrower

                                                                      **(Sign Original Only)**

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-INTEREST ONLY
FE-4266 (0204)                                    Page 3 of 3
*DOCPREP SERVICES, INC.* FORM - FE4266-4l01          ORIGINAL

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this __27TH__ day of __JUNE__ , __2005__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

5 ENCORE COURT

NEWPORT BEACH, CALIFORNIA 92663

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:   NEWPORT CREST

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

LOAN NO.:   312315                                      Initials _____ _____ _____ _____

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     **Form 3140 1/01**
*DOCPREP SERVICES, INC.*  FORM - MS3140N-3500                    Page 1 of 2
                                                                 ORIGINAL

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)          _____(Seal)
                             -Borrower                                       -Borrower
DIANE WEINSHEIMER

_____(Seal)          _____(Seal)
                             -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                             -Borrower                                       -Borrower

LOAN NO.:   312315

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3140 1/01
*DOCPREP SERVICES, INC.*  FORM - MS3140N-3500                    Page 2 of 2
                                                                ORIGINAL

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this <u>27TH</u> day of <u>JUNE</u>, <u>2005</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:
5 ENCORE COURT
NEWPORT BEACH, CALIFORNIA 92663

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of the Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____(Seal)          _____(Seal)
                                     -Borrower                                       -Borrower
DIANE WEINSHEIMER

_____(Seal)          _____(Seal)
                                     -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                     -Borrower                                       -Borrower

LOAN NO.:   312315

MULTISTATE SECOND HOME RIDER-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3890 1/01
DOCPREP SERVICES, INC.   FORM - MS3890N-3503

ORIGINAL

# EXHIBIT B

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: Shaun Wicks
TS No. 10-0056071

10-8-226962

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||    18.00

2010000234986 08:00am 05/19/10
66 406 S15 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 06/27/2005, executed by DIANE WEINSHEIMER, AN UNMARRIED WOMAN, Trustor, to LAWYERS TITLE COMPANY, as Trustee, and recorded as Instrument No. 2005000510215 on 06/30/2005, of Official Records in the County Recorder's Office of ORANGE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS:1800 Tapo Canyon Rd., CA6-914-01-94, SIMI VALLEY, CA  93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS2005-HYB5 all beneficial interest under that certain Deed of Trust described above.  Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: May 06, 2010

State of: **CALIFORNIA**

County of: **VENTURA**

On MAY 1 1 2010 before me, AHMAD AFZAL
T.SEVILLANO
, notary public, personally appeared
, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature    AHMAD AFZAL

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

)BY:

T. Sevillano, Assistant Secretary

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form subasgnmnt (01/09)*

Recording Requested By: DFS
On Behalf Of:
"LS - SV"

# EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By: **Mary Ann Hierman**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#    **5919466410713407**

Property Address:
**5 Encore Ct**
**Newport Beach, CA 92663-2364**
CAO-ADT 15735427            10/5/2011

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

**12.00**

**2011000562208 8:01 am 11/07/11**
**47 412 A32   2**
**0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00**

This space for Recorder's use

MIN #: 1000317-0000312315-1        MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST   2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-HYB5** whose address is 101 BARCLAY ST - 4W, NEW YORK ,NY 10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION** |
| Original Borrower(s): | **DIANE WEINSHEIMER, AN UNMARRIED WOMAN** |
| Original Trustee: | **LAWYERS TITLE COMPANY** |
| Date of Deed of Trust: | **6/27/2005** |
| Original Loan Amount: | **$640,000.00** |

Recorded in Orange County, CA on: 6/30/2005, book N/A, page N/A and instrument number **2005000510215**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

_10/6/11_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
**Pabla Zuniga, Assistant Secretary**

State of California
County of Ventura

On _10-6-2011_ before me, _IRMA DIAZ_____, Notary Public, personally appeared
Pabla Zuniga, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

IRMA DIAZ
Commission # 1903988
Notary Public - California
Ventura County
My Comm. Expires Sep 13, 2014

Notary Public: _____          (Seal)
My Commission Expires: _____

# EXHIBIT D

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

* S R 0 0 0 7 3 9 6 1 9 4 $ *

2015000156443 3:58 pm 03/26/15
143 401 A32 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording Requested By:

And When Recorded Mail To:
T.D. Service Company
LR Department (Cust# 610)
4000 W Metropolitan Dr Ste 400
Orange, CA 92868

——————————— Space above for Recorder's use ———————————

Customer#: 610/3   Service#: 4126817AS1   +

Loan#: 0515396994

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS 2005-HYB5 BY NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT, C/O NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MTG SERVICING, 55 BEATTIE PL #110, GREENVILLE, SC  29601-0000, hereby assign and transfer to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-HYB5 C/O NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,  55 BEATTIE PL STE 110, MS #001, GREENVILLE, SC 29601-0000, all its right, title and interest in and to said Deed of Trust in the amount of $640,000.00, recorded in the State of CALIFORNIA, County of ORANGE Official Records, dated JUNE 27, 2005 and recorded on JUNE 30, 2005, as Instrument No. 2005000510215, in Book No. —, at Page No. —.

Executed by DIANE WEINSHEIMER, AN UNMARRIED WOMAN, as trustors, LAWYERS TITLE COMPANY, as trustee and, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SECURITYNATIONAL MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS as the original beneficiary. Legal Description: As more fully described in said Deed of Trust.

Loan#: 0515396994    Srv#: 4126817ASI
Page 2

Date: 03/17/15

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWMBS 2005-HYB5 BY NEW PENN FINANCIAL LLC DBA
SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT

By: _____

 Christian Hoopes, Senior Director
State of        SOUTH CAROLINA              }
County of       GREENVILLE                  } ss.

On 03/17/15 _____, before me, Bernita S. Hallums, a Notary Public, personally appeared   Christian
Hoopes , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

(Notary Name): Bernita S. Hallums
My commission expires: 09/04/2024

# EXHIBIT E

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

* S R 0 0 0 7 7 0 7 4 5 7 $ *

2015000384072 1:34 pm 07/23/15
93 405 S15 F13  2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

Old Republic Default Management Services

AND WHEN RECORDED MAIL TO:

New Penn Financial, LLC d/b/a
Shellpoint Mortgage Servicing
55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 932-582-045  TS No.: 14-52694   TSG Order No.: 02-14024644   Loan No: 0515396994

# SUBSTITUTION OF TRUSTEE

**WHEREAS, DIANE WEINSHEIMER, AN UNMARRIED WOMAN** was the original Trustor, **LAWYERS TITLE COMPANY** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION** was the original Beneficiary under that certain Deed of Trust dated 6/27/2005 and recorded on 6/30/2005 as Instrument No. 2005000510215 , **in Book** --, **Page** -- of Official Records of Orange County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes **Old Republic National Title Insurance Company**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

TS No.: 14-52694
Loan Number: 0515396994

Dated: **7/20/15**

### Substitution of Trustee

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-HYB5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-HYB5

Name: *Chasity Cofield*
Title: *Foreclosure Specialist*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

STATE of _Texas_
COUNTY of _Harris_

Before me, _Sophia Martinez_, the undersigned officer, on this, the _20_ day
(insert name of notary)
of _July_, 2015, personally appeared _Chasity Cofield_
(insert name of signer)

☐ known to me or, ☐ through production of _____ as identification, who identified her/himself to be the _Foreclosure Specialist_ of New Penn Financial LLC DBA Shellpoint Mortgage Servicing, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

(seal)

(Type or print name below signature)
Notary Public, State of _Texas_
Commission No.: _N/A_
My Commission Expires: _1/28/19_

SOPHIA MARTINEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. January 28, 2019

# EXHIBIT F

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

*  S R 0 0 0 7 9 4 6 4 6 8 $  *
**2015000575481 2:31 pm 11/05/15**
47 406 S15 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

| APN: 932-582-45 | TS No: CA08003185-15-1-FT | TO No: 02-15036669 |

## SUBSTITUTION OF TRUSTEE

WHEREAS, DIANE WEINSHEIMER, AN UNMARRIED WOMAN was the original Trustor(s), LAWYERS TITLE COMPANY was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION, its successors and assigns, was the original Beneficiary under that certain Deed of Trust dated June 27, 2005 and recorded on June 30, 2005 as Instrument No. 2005000510215 of official records in the Office of the Recorder of Orange County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, The Bank of New York Mellon FKA The Bank of New York, As Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB5, Mortgage Pass-Through Certificates, Series 2005 HYB5 hereby substitutes MTC Financial Inc. dba Trustee Corps, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: 10/27/15

New Penn Financial, LLC dba Shellpoint Mortgage Servicing as Servicer for The Bank of New York Mellon FKA The Bank of New York, As Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB5, Mortgage Pass-Through Certificates, Series 2005 HYB5

By: Joy Wilson
Foreclosure Specialist

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _____

COUNTY OF _____

On 10/27/15 _____ before me, Suzette Figaro Notary Public, personally appeared ___Joy Wilson___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___Texas___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

SUZETTE FIGARO
Notary Public, State of Texas
My Commission Expires
February 26, 2017

# EXHIBIT G

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||||||||||| 15.00
* S R 0 0 0 8 0 1 4 8 6 6 $ *
**2015000624574 11:14 am 12/09/15**
217 402 N15 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

APN: 932-582-45          TS No: CA08003185-15-1          TO No: 02-15036669

---

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1).  The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)**

## IMPORTANT NOTICE
# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by
paying all of your past due payments plus permitted costs and expenses within the time permitted by law
for reinstatement of your account, which is normally five business days prior to the date set for the sale of
your property.  No sale date may be set until approximately 90 days from the date this Notice of Default
may be recorded (which date of recording appears on this notice).

This amount is **$327,060.09 as of December 7, 2015,** and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in the
Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to
reinstate your account in good standing.  In addition, the Beneficiary or Mortgagee may require as a
condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property
taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire
amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though
full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the
Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above)
to, among other things, (1) provide additional time in which to cure the default by transfer of the property
or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits

APN: 932-582-45          TS No: CA08003185-15-1          TO No: 02-15036669

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc. CHL Mortgage Pass-Through Trust 2005-HYB5, Mortgage Pass-Through Certificates, Series 2005 HYB5 c/o MTC Financial Inc. dba Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Ref No: CA08003185-15-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of June 27, 2005, executed by DIANE WEINSHEIMER, AN UNMARRIED WOMAN, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION, the original Beneficiary, recorded June 30, 2005, as Instrument No. 2005000510215, of the official records in the Office of the Recorder of Orange County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $640,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON December 1, 2009 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC Financial Inc. dba Trustee Corps, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: December 7, 2015                    **MTC Financial Inc. dba Trustee Corps**
                                           **as Duly Appointed Successor Trustee**

                                           By: Myron Ravelo, Authorized Signatory

MTC Financial Inc. dba Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security Instrument, including the right to foreclose its lien.

# California Declaration of Compliance
## (Civ. Code § 2923.55(c))

| | |
|---|---|
| Borrower(s): | DIANE WEINSHEIMER, AN UNMARRIED WOMAN |
| Loan No.: | ~~████████~~ |
| Property Address: | 5 ENCORE COURT<br>NEWPORT BEACH, CA 92663 |
| Trustee's Sale No.: | ~~████████~~ CA0800318S-15 |

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☐     The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☑     The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐     The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐     No contact was made with the borrower pursuant to California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in California Civil Code § 2924.15(a)

Executed on _July 31, 2015_, at _Houston, TX_ .

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

By: _D. Kemp_

Name: _Doquita Kemp_

Title: _Fulfillment_